IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JUDY BOUCHILLON                                                                                  PLAINTIFF

V.                                                         CIVIL ACTION NO. 1:14-CV-135-SA-DAS

SAME DEUTZ-FAHR, GROUP, et al.                                                      DEFENDANTS

ORDER ON MOTION FOR SPECIAL MASTER

Judy Bouchillon commenced this wrongful death, product liability action after her husband was fatally injured while operating a Deutz model tractor. Deutz AG ("Deutz") filed a Motion for Summary Judgment, as did SAME Deutz-Fahr North America, Inc. ("SAME North America"), and Same Deutz-Fahr, Group ("SAME Group").[1] Also pending is a motion by the SAME Defendants for appointment of a special master. For the reasons set forth below, the Court finds that a special master is needed to effectively resolve multiple issues presented in the summary judgment motions. The Motion for a Special Master [97] is GRANTED, and the motions for summary judgment [81], [100] will be submitted in part to the special master, to rule on the issues identified in this order.

*Facts and Procedural History*

In August 2013, Jim Bouchillon was operating a Deutz model 3006 tractor with an attached mower to cut the grass on his property. The tractor came into contact with a tree sapling, causing the sapling to "cinch down on top of Mr. Bouchillon's back," resulting in his death. Mr. Bouchillon's wife and estate representative, Judy Bouchillon, filed this suit against Deutz and the SAME Defendants. Deutz manufactured the subject tractor. The SAME Defendants now own Deutz's former tractor business.

---

[1] The Court will refer, at times, to SAME North America and SAME Group as the SAME Defendants.

Plaintiff alleges claims of design defect and failure to warn under the Mississippi Product Liability Act ("MPLA"). The Defendants moving for summary judgment all disclaim the product liability risks for Plaintiff's claims, and all deny that they are proper defendants to the suit.

It is undisputed that in 1991, Deutz[2] bore the product liability risks for the tractor at issue. But over the course of two capital contribution agreements, one in 1991 and another in 1992, Deutz transferred its tractor business to its subsidiary, KHD Agrartechnik GMbH ("Agrartechnik"). In 1995, Deutz sold its shares and property rights in Agrartechnik to the corporate predecessors to a wholly owned subsidiary of Defendant SAME Group. After the 1995 sale and through a series of name changes and mergers, Agrartechnik has become known as SAME DEUTZ-FAHR DEUTSCHLAND GmbH ("SAME Germany"), another Defendant, owned by the SAME Group, that has not joined in the SAME Defendants' motion for summary judgment.[3]

The basis of both summary judgment motions concerns the legal effect of the 1992 contribution agreement between Deutz and Agrartechnik. Deutz contends that it transferred all product liability risks for the tractor to Agrartechnik (now SAME Germany) and cannot be liable to Plaintiff for any judgment in her favor. Primarily, Deutz highlights German language from the 1992 agreement, which it translates to mean that all liabilities "recorded or *addressed in* the transfer balance sheet" were transferred. (emphasis added). It argues that product liability risks were "addressed in" the transfer balance sheet through the line item "other reserves" in accord with German accounting principles, and that the agreement as a whole evinces the intent to transfer product liability risks.

---

[2] At the time, Deutz was named Kloeckner-Humboldt-Deutz AG.

[3] SAME Germany has filed a separate motion to dismiss for lack of personal jurisdiction [135].

The SAME Defendants assert that the 1992 agreement did not transfer the product liability risks, and that no SAME entity is liable. They first contend that a transfer of product liability is prohibited by the German Product Liability Act ("GPLA"). The SAME Defendants alternately assert that the language from the 1992 agreement is properly translated as liabilities "recorded or *named*" or "recorded or *specified*." The category in the balance sheet "other reserves," they argue, is not an explicit reference to product liability risks, and is insufficient for transfer under the language of the 1992 agreement and under German law.

All parties agree that this case is governed in part by Mississippi law and in part by German law, though they disagree as to the extent of the applicability of each. The SAME Defendants seek a special master to assist the Court in determining the German legal issues. Deutz contends that no real conflict between Mississippi law and German law has been identified, and that no special master is needed. The Court will explain the propriety of appointing a special master before turning to the specific issues that will be referred.

*Necessity of Appointing a Special Master*

District courts are empowered to appoint special masters to, among other things, "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." FED. R. CIV. P. 53(a)(1)(C). Circumstances warranting a special master are limited, representing "the exception, not the rule." *Haley v. Merial, Ltd.*, No. 4:09-CV-94-DAS, 2010 WL 5185386, at *1 (N.D. Miss. Dec. 15, 2010). The advisory notes to the 2003 Amendments to Rule 53(a)(1)(a) state that "[a] master should be appointed only in limited circumstances . . . . and only when the need is clear." One such limited circumstance is the "determination of foreign law." FED. R. CIV. P. 53(a)(1)(a) advisory committee's note (alterations omitted); 9C ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 2602.1 ("A pretrial master's reference may include duties, such as . . . the determination of foreign law . . . . when the need is clear.").

After reviewing the arguments and authorities presented, the Court finds that a special master experienced in German law is needed for an effective and timely resolution of the summary judgment motions. As will be explained, it is possible that there is no outcome-determinative difference between Mississippi law and German law, but a thorough analysis of German law necessarily precedes reaching such a conclusion. The SAME Defendants' request for a special master is well taken.

*Scope of Referral to Special Master*

To determine the law applicable to the various issues presented, and thus the scope of the referral to the special master, the Court is bound to "apply the choice-of-law rules of the state in which it sits." *Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 620 (5th Cir. 2014) (numerous citations omitted). Under Mississippi law, choice-of-law analysis only arises "when there is a true conflict" between the laws of different sovereigns and only when each sovereign has an interest in the litigation. *Id.* (quoting *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006)). Mississippi state and federal courts conduct issue-by-issue choice-of-law analysis, "recognizing that the answer produced in some instance may be that the law of [Mississippi] applies and in other questions in the same case the substantive law of another [sovereign] may be enforceable." *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985). The law of a single sovereign "does not necessarily control every issue in a given case . . . ." *Walker v. Williamson*, --- F. Supp. 3d ---, 2015 WL 5534297, at *3 (S.D. Miss. Sept. 18, 2015) (quoting *Boardman*, 470 So. 2d at 1031).

Keeping with these choice-of-law principles, the Court explains the four broad issues implicated by the motions for summary judgment; the law applying to the issues where apparent; the potential for a conflict where the applicable law is unclear; and the necessity of referral to the special master.

**(1) Plaintiff's Claims**

Though not directly addressed in the summary judgment motions, Plaintiff's theories of recovery are relevant to the analysis. Generally speaking, Mississippi law and specifically the Mississippi Product Liability Act ("MPLA") apply to Plaintiff's claims. Under Mississippi's choice-of-law rules, issues of tort are governed by "the law of the place of the injury unless another state has a more substantial relationship to the action." *Williams*, 741 F.3d at 623 (quoting *Davis v. Nat'l Gypsum Co.*, 743 F.2d 1132, 1133 (5th Cir. 1984)).[4] No party has suggested that Germany possesses a more substantial relationship to the tort issues than Mississippi. Thus, the MPLA will apply, and reference to the special master is unnecessary as to Plaintiff's prima facie recovery under that statue.

**(2) Validity of Transfer**

The SAME Defendants contend that the GPLA prohibited the transfer of the product liability risk pertinent to this case. The parties agree that Mississippi law would not prevent such a transfer. *See Monzingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985). If the SAME Defendants' position is correct, then there will be a conflict between Mississippi law and

---

[4] In determining whether a different sovereign possesses a "more substantial relationship," Mississippi courts consider:

> the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered.

*Williams*, 741 F.3d at 623 (quoting Restatement (Second) of Conflict of Laws § 145(2)) (internal quotation marks omitted).

German law, and the Court will undertake a choice-of-law analysis pursuant to Mississippi's choice-of-law rules. *See Zurich*, 920 So. 2d at 432. However, two questions about the GPLA's applicability make it unclear whether a conflict exists.

As an initial matter, the parties dispute whether the GPLA applies to prevent transfer of liability in the type of corporate contribution agreement at issue here. By way of undisputed translation, Section 14 of the GPLA provides:

> The liability of a [manufacturer] in accordance with the Act cannot be excluded or restricted in advance. Any agreement to the contrary is void.

The SAME Defendants afford Section 14 a broad construction, positing that it applies to any attempt to avoid liability by agreement. Deutz supplies a more constrictive reading, explaining that Section 14 was only intended to prevent manufacturers from seeking prospective waivers with consumers and end-users of their products. The correct interpretation of the GPLA is a question of German law, and it will be referred to the special master.

Another scope-related issue is whether the GPLA's prohibition of "excluding" or "restricting" liability applies to Plaintiff's Mississippi product liability claims. It appears that Section 14, by its terms, only prevents exclusion or restriction of "liability . . . in accordance with the [GPLA] . . . ." Plaintiff seeks recovery, not under the GPLA, but under the MPLA. Thus, the Court is inclined to rule that Section 14 has no application here. But because this question too requires an interpretation of German law, the Court will refer it to the special master.

The answers to these German law questions may reveal an absence of conflict with regard to Section 14 and obviate the need for a choice-of-law analysis. *See id.* Therefore, the Court will defer the choice-of-law analysis in this regard until it becomes necessary.

**(3) Construction of the 1992 Agreement**

Even if the GPLA did not prohibit the transfer of the product liabilities in this case, the SAME Defendants dispute, as noted above, whether the 1992 contribution agreement effectively transferred the liabilities. The parties have not identified a specific conflict between Mississippi law and German law on the issue of contract interpretation, but they agree that, to the extent a conflict exists, German interpretive principles will control. Indeed, the agreement involved two German corporations, is written in German, and was entered into in Germany.[5]

The Court recognizes that under both Mississippi law and German law, with any contractual provision, several interpretive principals may be at play. As such, the existence of a conflict may not be apparent until a thorough application of German law has been conducted. For this reason, and because a special master fluent in German will be better able to ascertain contractual intent by reviewing the language as written, the Court refers the issue of contract interpretation to the special master.

**(4) Continuity of Enterprise Theory**

If the Court determines that the product liability risks at issue were not transferred to the SAME Defendants, they may be nonetheless liable to Plaintiff pursuant to Mississippi's "continuity of enterprise" theory. This doctrine imposes liability on a successor company for "debts owed by the predecessor when the successor takes on the identity of the predecessor company in every way except taking responsibility for the predecessor's debts." *Paradise Corp. v. Amerihost Development, Inc.*, 848 So. 2d 177, 180-81 (Miss. 2003). The parties have not

---

[5] In the absence of a contractual choice-of-law provision, relevant considerations for determining which body of contract law applies are: "the place of contracting," "the place of negotiation of the contract," "the place of performance," "the location of the subject matter of the contract," and "the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188(2); *see also ABS Servs., Inc. v. New York Marine & General Ins. Co.*, 524 F. App'x 946, 949 (5th Cir. 2013) ("Mississippi, the forum state, follows the choice-of-law rules set forth in the Restatement (Second) of Conflict of Laws.").

discussed whether there is a similar doctrine under German successor liability law, or whether there is a conflict requiring choice-of-law analysis.[6] The special master will be asked to determine the existence of a similar German law doctrine, and apply it to the facts of this case. In the event of an outcome-determinative conflict on this issue, the Court will conduct a choice-of-law analysis. *See Zurich*, 920 So. 2d at 432.

*Conclusion*

For the foregoing reasons, the motion for a special master [97] is GRANTED, and the motions for summary judgment [81, 100] are submitted in part to the special master, to answer the following questions:

(1) At the time of the 1992 contribution agreement between Deutz, then named Kloeckner-Humboldt-Deutz AG, and Agrartechnik GMbH, did German law prohibit Deutz from transferring to Agrartechnik the product liability risk of the claims brought by Plaintiff under the Mississippi Product Liability Act?

(2) In the 1992 contribution agreement, did Deutz expressly or impliedly transfer to Agrartechnik the product liability risk of the claims brought by Plaintiff?

(3) Even if the product liability risk at issue was not transferred in the 1992 agreement, are the SAME Defendants nonetheless liable for a judgment, if any, in Plaintiff's favor, pursuant to German successor liability law, under a doctrine similar to Mississippi's "continuity of enterprise" theory, identified herein?

The Court will supply a notice to the parties describing the special master's proposed duties, time to complete the duties, standards of review, compensation, and appointment procedure.

**SO ORDERED, this the 10th day of March, 2016.**

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**

---

[6] Because it serves to expand a plaintiff's avenues for recovery and not to restrict them, *see Paradise Corp.*, 848 So. 2d at 180-81, the "continuity of enterprise" theory would not run afoul of Section 14 of the GPLA, if applicable.