**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**JUDY BOUCHILLON, Individually, and**                                                           **PLAINTIFF**
**on behalf of the Statutory Wrongful Death**
**Beneficiaries of Jim Bouchillon, Deceased;**
**and as Personal Representative of the**
**Estate of Jim Bouchillon**

**V.**                                                                                **NO. 1:14-CV-00135-DMB-DAS**

**SAME DEUTZ-FAHR, GROUP; SAME**
**DEUTZ-FAHR NORTH AMERICA, INC.;**
**DEUTZ AG; and SAME DEUTZ-FAHR**
**DEUTSCHLAND, GMBH, d/b/a as SAME**
**Deutz-Fahr Germany**                                                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This products liability action is before the Court on: (1) SAME Deutz-Fahr Deutschland, GmbH's motion to dismiss, Doc. #135; (2) Deutz AG's motion for summary judgment, Doc. #81; (3) SAME Deutz-Fahr North America, Inc., and SAME Deutz-Fahr, Group's motion for summary judgment, Doc. #100; (4) SAME Deutz-Fahr North America, Inc., and SAME Deutz-Fahr, Group's motion to adopt the pending special master's report and recommendation, Doc. #229; and (5) Deutz AG's motion to adopt in part and modify in part the report and recommendation, Doc. #228.

**I**
## Procedural History

### A. Complaint and Filing of Dispositive Motions

This case arises out of a fatal injury sustained by Jim Bouchillon while he was operating a Deutz model 3006 tractor ("Tractor") on August 17, 2013. Doc. #1 at ¶ 8. His wife and estate representative, Judy Bouchillon, commenced this wrongful death product liability action against

three German corporations: SAME Deutz-Fahr, Group ("SAME Group"); Deutz AG ("Deutz"); and SAME Deutz-Fahr North America, Inc. ("SAME America"). *Id.* In her complaint, Judy[1] alleged that the Tractor was defective and "was designed, manufactured, marketed, distributed, warranted, and sold by Defendants." *Id.* at ¶¶ 10–13. The complaint asserted two claims: a design defect claim pursuant to Miss. Code Ann. § 11-1-63; and a failure to warn claim pursuant to Miss. Code Ann. § 11-1-63. *Id.* at ¶¶ 14–21. SAME America and SAME Group answered the complaint on November 7, 2014. Doc. #4. Deutz, after seeking and receiving an extension of the deadline to respond to the complaint, answered on January 19, 2015. Doc. #14; Doc. #19.

On June 15, 2016, after approximately a year of discovery, Judy filed a motion to amend her complaint to add an additional defendant, SAME Deutz-Fahr Deutschland GmbH, d/b/a Same Deutz-Fahr Germany ("SAME Germany"). Doc. #66. SAME America and SAME Group responded in opposition to the motion to amend, Doc. #76, and Judy replied, Doc. #77. On July 15, 2015, United States Magistrate Judge David A. Sanders granted the motion to amend. Doc. #85. On July 17, 2015, Judy filed her amended complaint. Doc. # 86. All defendants answered the amended complaint. Doc. #90; Doc. #108; Doc. #109.

On July 8, 2015, Deutz filed a motion for summary judgment, arguing that it transferred "all assets, liabilities and risks of its tractor business" in a sale which took place in 1991 and 1992. Doc. #81. SAME Group and SAME America filed their own motion for summary judgment on September 4, 2015, arguing that the 1991 and 1992 sale did not transfer liability. Doc. #100. On December 18, 2015, SAME Germany filed a motion to dismiss for lack of personal jurisdiction. Doc. #135. All three motions have been more than fully briefed.

---

[1] To avoid confusion, the Court will refer to the Bouchillons by their first names.

## B. Referral to Special Master

On March 10, 2016, the Court,[2] acting on motion of SAME America and SAME Group, issued an order submitting the pending motions for summary judgment to a special master. Doc. #162. On June 17, 2016, this Court, after receiving from the parties four nominations for special master, appointed Werner F. Ebke as special master in this action. Doc. #188.

On December 8, 2016, Ebke, after seeking and receiving numerous extensions, filed his Report and Recommendation ("Original R&R") with the Court.[3] Doc. #215. On December 29, 2016, Judy filed a motion to adopt the Original R&R, Doc. #218; and SAME America and SAME Group filed a joint motion to adopt the Original R&R, Doc. #219. On January 3, 2017, Deutz filed a motion to adopt in part and modify in part the Original R&R. Doc. #220. SAME America and SAME Group responded in opposition to Deutz's motion to modify, Doc. #222, and Deutz timely replied, Doc. #223.

On February 7, 2017, this Court, after consultation with the parties, resubmitted the Original R&R to Ebke for the purpose of clarifying certain issues raised by the post-filing briefing. Doc. #225. The order denied as moot the pending motions to adopt and/or modify. *Id.*

Ebke filed a Resubmitted Report and Recommendation ("Resubmitted R&R") on April 17, 2017. Doc. #226. On May 8, 2017, Deutz filed a motion to adopt in part and modify in part the Resubmitted R&R, Doc. #228; and SAME America and SAME Group moved to adopt the Resubmitted R&R in its entirety, Doc. #229. On May 22, 2017, SAME America and SAME Group responded in opposition to Deutz's motion. Doc. #230. Deutz replied in support of its

---

[2] At the time, this case was assigned to Chief Judge Sharion Aycock. After Judge Aycock's recusal on April 14, 2016, the case was reassigned to the undersigned. Doc. #185.

[3] Ebke submitted his report beyond the then-December 5, 2016, deadline. *See* Doc. #214. Nevertheless, in the interest of judicial efficiency, the report has been accepted as timely.

motion on May 30, 2017.  Doc. #231.

**II**
**Evidentiary Standards**

As mentioned above, this action is before the Court on three dispositive motions:  two cross motions for summary judgment and a motion to dismiss for lack of personal jurisdiction.

**A.  Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016).  "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (internal quotation marks omitted).  On a motion for summary judgment, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotation marks and alterations omitted).  If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted).  "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an

4

absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

## B. 12(b)(2) Standard

A party may challenge the Court's exercise of personal jurisdiction by filing a motion pursuant to Federal Rule of Civil Procedure 12(b)(2). On a Rule 12(b)(2) motion, "the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices." *Luv N' care, Ltd v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (internal citations omitted). Where, as here,[4] a defendant disputes the factual bases of jurisdiction, "the court may receive interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the jurisdictional issue." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (internal quotation marks omitted). However, a court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson v. Aker Sols., Inc.*, 826 F.3d 231, 233 (5th Cir. 2016) (internal alteration omitted).

### III
### Factual Background

As explained above, the primary difference between developing a factual record for a motion for summary judgment and a motion to dismiss for personal jurisdiction is that in the latter, a court considers a plaintiff's uncontroverted allegations. Here, the parties have incorporated their summary judgment briefing for the purpose of resolving the motion to dismiss.

---

[4] SAME Germany submitted an affidavit in support of its motion to dismiss. Doc. #135-1.

*See* Doc. #149; Doc. #153. Additionally, Judy has made no uncontroverted allegations which are relevant to the dispositions of the pending motions. Accordingly, the factual records for resolving the motions are largely the same.[5]

## A. Relevant Parties and Corporate Structures

Deutz is a German corporation with its headquarters in Germany. Doc. #90 at ¶ 5. Deutz, under the name Kloeckner-Humboldt-Deutz AG ("KHD"),[6] manufactured tractors from 1924 until April 1992. Doc. #100-1. The company manufactured the 3006 tractor from 1968–1978. *Id*. at 2.

On September 30, 1991, KHD entered into a contribution agreement with KHD Agrartechnik GmbH ("Agrartechnik"), another German corporation. Doc. #100-4. The agreement assigned to Agrartechnik "corporate and operational management" of KHD's tractor division and called for the transfer of the division's "significant [a]ssets and [l]iabilities (moveable tangible assets and participations such as pension reserves)." *Id*. at §§ 1–2, 12.

On March 31, 1992, KHD and Agrartechnik executed another contribution agreement transferring total control of the division, as well as the division's remaining assets and liabilities, "in particular the existing inventories and receivables as well as liabilities." Doc. #100-6. The transfer was to be effected on the basis of a transfer balance sheet. *Id*. at § 3. Of relevance here, the 1992 contribution agreement provided that the "assets" of the tractor business were to include all unconditional and uncertain liabilities recorded or named in the transfer balance sheet. *Id*. at § 6. The transfer balance sheet, in turn, included 46,132,716.82 in German Marks for "other

---

[5] Documents related to the sale of the Tractor were submitted with regard to the motion to dismiss but not the motions for summary judgment. *See* Doc. #171 and accompanying exhibits. Facts gleaned from these exhibits, and an exhibit submitted with SAME America and SAME Group's reply, are set forth below but have not been considered for the purpose of resolving the motions for summary judgment.

[6] Before 1997, Deutz operated under the name Kloeckner-Humboldt-Deutz AG. Doc. #102-1 at 5–6.

reserves," which purported to take "adequately into account all recognizable risks and uncertain liabilities."  Doc. #100-7.

Following the sale, KHD maintained ownership of all corporate shares of Agrartechnik as well as another Deutz-Fahr entity, Deutz-Fahr Emtesysteme GmbH.  Doc. #100-8 at 2–3.  On April 4, 1995, KHD sold its shares of Agrartechnik and Deutz-Fahr Emtesysteme GmbH to S+L+H S.p.A., an Italian corporation.  Doc. #100-8.  In the same transaction, KHD sold its "industrial property rights" in the tractor business to SAME S.p.A., a second Italian corporation.  *Id*. at 47.  Deutz contends, and SAME Germany does not dispute, that S+L+H S.p.A. and SAME S.p.A. are corporate predecessors of SAME Group.  *See* Doc. #82 at 2.[7]

On July 14, 1995, Agrartechnik changed its name to DEUTZ-FAHR Agrartechnik GmbH.  *See* Doc. #81-8; Doc. #81-12.  In October 1998, DEUTZ-FAHR Agrartechnik GmbH merged with Deutz-Fahr Emtesysteme GmbH to form DEUTZ-FAHR Agrarsysteme GmbH.  Doc. #81-9; Doc. #81-12.  The following October, DEUTZ-FAHR Agrarsysteme GmbH merged with SAME-LAMBORGHINI TRAKTOREN-VERTRIEB Gmbh to form SAME DEUTZ-FAHR Agrarsysteme GmbH.  Doc. #81-10; Doc. #81-12.  Finally, in June 2002, SAME DEUTZ-FAHR Agrarsysteme GmbH changed its name to SAME DEUTZ-FAHR DEUTSCHLAND GmbH (SAME Germany).  Doc. #81-11; Doc. #81-12.

## B.  Deutz's American Tractor Business

During the early 1970's, Deutz sold its tractors to American consumers through its wholly owned American subsidiary, Deutz Tractor Corporation.  Doc. #176-1 at 23.  Deutz Tractor Corporation recruited and franchised dealers to distribute the tractors.  *Id*. at 90.  By

---

[7] As support for this proposition, Deutz cites to a Wikipedia page.  Doc. #82 at 2.  The use of Wikipedia for factual propositions has been the subject of much discussion.  *See* Lee F. Peoples, *The Citation of Wikipedia in Judicial Opinions*, 12 Yale J. L. & Tech. 1, 4 (2010).  Because no party has objected to the citation, the Court will consider it for the purpose of this opinion.

1973, Deutz Tractor Corporation distributed the tractors from four distribution centers, one of which was located in Vicksburg, Mississippi, to four hundred retail dealers in twenty-seven different states. *See* Doc. #171-1; Doc. #171-2 at 89–90. One of the district managers from Deutz Tractor Corporation lived in Mississippi. Doc. #171-2 at 92.

Of relevance here, Lee Tractor Company, located in Winston County, Mississippi, served as a Deutz Tractor dealer. Doc. #171-6 at ¶ 1. James E. Metts, a Winston County resident, purchased a Deutz Model 3006 tractor from Lee Tractor Company on April 21, 1971. *Id*. According to Metts, Lee Tractor Company served as a Deutz dealer "for many years" and, as a result, "there are very many Deutz tractors of various models situated ... inside Winston County." *Id*.

### C. The Tractor and Accident

The Tractor, which bears the serial number 7488 4368,[8] was manufactured on October 31, 1973, and shipped to the United States on November 20, 1973.[9] Doc. #171-7. Due to a lack of documentation, it is uncertain where the Tractor was first purchased or how it came to be owned by Jim. However, Judy believes that Jim acquired the Tractor from a Winston County resident sometime in 2011. Doc. #171-3 at 6. On August 17, 2013, Jim was killed while operating the Tractor on his property in Winston County. Doc. #86 at ¶¶ 9–10.

### IV
### Applicable Law

Before turning to the merits of the Resubmitted R&R, the Court must first address a threshold issue: whether Mississippi law or German law governs the issues of successor liability

---

[8] Doc. #171-3 at 7.

[9] Relevant documentation shows the Tractor was shipped to a country bearing code "212." Doc. #171-7. Although the key for shipping codes has been lost, documentation shows that the tractor purchased by Metts in the United States was also shipped to country code 212. *Id*.

in this case which, as explained below, relate to the motions for summary judgment and the motion to dismiss for lack of personal jurisdiction. Deutz argues Mississippi law controls. The SAME entities submit the issues must be determined by reference to German law.

"A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016). "Where there is a conflict of laws, Mississippi follows the *Restatement (Second) Conflict of Laws*." *Williams v. Clark Sand Co., Inc.*, 212 So.3d 804, 809 (Miss. 2015). Under this approach:

> Once a true conflict is established, Mississippi's choice of law test consists of three steps: (1) Determine whether the laws at issue are substantive or procedural. If they are procedural, the inquiry ends and Mississippi law applies. (2) If substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws. With regard to the last step, Mississippi resolves conflict-of-laws questions using the "significant relationship" test found in the Restatement (Second) of Conflict of Laws (1971).

*Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 620–21 (5th Cir. 2014) (internal alterations, quotation marks, and citations omitted). In applying this approach, "the law of a single state does not necessarily control every issue in a given case." *Boardman v. United Servs. Auto Ass'n*, 470 So.2d 1024, 1031 (Miss. 1985). Rather, a court must apply the "test to each question presented, recognizing that the answer produced in some instances may be that the law of [Mississippi] applies and on other questions in the same case the substantive law of another state may be enforceable." *Id.*

### A. True Conflict of Law

"Choice of law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation." *Zurich Am. Ins. Co. v. Goodwin*, 920 So.2d 427, 432 (Miss. 2006). Here, there is a conflict of law because, as explained below, German law

requires that an assumption of a future product liability be ratified by an obligee while Mississippi law does not contain such a requirement. Doc. #226 at ¶ 71; *see Huff v. Shopsmith*, 786 So.2d 383, 388 (Miss. 2001) (discussing assumption of liabilities without mentioning need for ratification). A conflict of law also exists because German law does not have a doctrine "resembling" Mississippi's continuity of enterprise theory. Doc. #226 at ¶ 77.[10]

## B.  Substantive or Procedural Issues

"[T]he law of the forum determines whether an issue in the action is substantive or procedural in nature." *Williams*, 741 F.3d at 621. An issue is substantive when it is determinative of whether a plaintiff "has a viable cause of action." *Hartford Underwriters Ins. Co. v. Found. Health Servs., Inc.*, 524 F.3d 588, 593 (5th Cir. 2008). In Mississippi, "few laws are classified as procedural. In addition to the Mississippi Rules of Civil Procedure, and Rules of Evidence, [the Mississippi Supreme Court has] only found the definition of 'procedural' to include statutes of limitations, awards of attorney's fees and awards of prejudgment interest." *Zurich*, 920 So.2d at 433.

Here, there is no question that both conflicts of law, which each deal with the general issue of successor liability, are determinative of whether Judy has a viable claim against the SAME defendants. Accordingly, these issues are substantive for the purpose of Mississippi's choice of law analysis.

## C.  Classification of Issues

"The second step in choice of law analysis is to classify the substantive area of law" for each issue. *Zurich*, 920 So.2d at 433. SAME Group and SAME America argue that the issues of

---

[10] As explained below, German law has a doctrine which, while substantively different, produces a similar result in some circumstances.

successor liability should be classified as corporate law or, in the alternative, contract law.  Doc. #124 at 7; Doc. #139 at 4.  Deutz argues that the issues must be classified as implicating tort law. Doc. #129 at 8.

### 1.  Classification framework

As a general rule, "[t]he classification and interpretation of Conflict of Laws concepts and terms are determined in accordance with the law of the forum ...."  Restatement (Second) of Conflict of Laws § 7(2).  Accordingly, Mississippi's interpretation of the relevant issues is controlling for the purpose of characterization.  *Id*.

Mississippi courts have not specifically characterized either issue before this Court—liability through assumption of liabilities or through continuity of enterprise.  However, when applying Mississippi law, the Fifth Circuit has held that "courts should look to the section that is most relevant to the particular issue at hand."  *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venezuela*, 575 F.3d 491, 498 (5th Cir. 2009) (citing *McDaniel v. Ritter*, 556 So.2d 303, 311 (Miss. 1989)) (internal quotation marks and alterations omitted).  To this end, the Mississippi Supreme Court's recent decision in *Williams v. Clark Sand Co., Inc.* offers a framework for making such a determination.

In *Williams*, a Mississippi plaintiff brought a products liability action against a dissolved Florida corporation.  212 So.3d at 805.  The plaintiff alleged a conflict between Florida's corporate-survival statute and Mississippi's statute of limitations and discovery rule.  *Id*. at 809. The Mississippi Supreme Court held there was no conflict between the two rules but, citing to the corporate law section of the Restatement addressing corporate existence, noted that "[t]o the extent that a conflict ostensibly does exist, the authorities point to application of Florida law." *Id*. at 810.  This analytical framework suggests that where, as here, an issue in a products liability

case[11] falls under one of the Restatement's corporate law provisions, the issue is properly characterized as one of corporate law.

## 2. Analysis

Of relevance here, the Restatement directs:

> (1) Issues involving the rights and liabilities of a corporation, other than those dealt with in § 301, are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

> (2) The local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 302 (1971).[12]  Section 301, in turn, provides that "[t]he rights and liabilities of a corporation with respect to a third person that arise from a corporate act of a sort that can likewise be done by an individual are determined by the same choice-of-law principles as are applicable to non-corporate parties."  Where, as here, a plaintiff seeks to impose liability based on successor liability rather than a "primary violation," the "issue" for the purpose of a § 301 and § 302 analysis is "the transaction which (potentially) gave rise to successor liability," not the "underlying tortious conduct."  *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F.Supp.2d 1164, 1173–74 (C.D. Cal. 2011).

In this case, Judy seeks to impose successor liability based on the alleged assumption of liability in the contribution agreements and the alleged subsequent continued operation of

---

[11] Notably, the Restatement includes a separate provision related to wrongful death actions which was apparently not before the Court in *Williams*.  *See* Restatement (Second) Conflict of Laws § 175.  However, this provision is governed "by the same principles as control selection ... to personal injuries in general."  *Id*. at § 175 cmt. a.

[12] While Mississippi has not expressly adopted the provisions of § 301, the Mississippi Supreme Court adopted at least one provision of the Restatement's corporate chapter in *Williams*.  There is no reason to think the Court intended this adoption to be piecemeal.  *See generally Bybee Farms, LLC v. Snake River Sugar Co.*, 625 F.Supp.2d 1073, 1078 (E.D. Wash. 2007) (predicting "most significant relationship" jurisdiction would adopt § 302).

Deutz's corporate enterprise.[13]  By its very nature, the continuation of a corporate enterprise is not an act which can be done by an individual.  Accordingly, the issue of whether the subsequent operation of the enterprise gave rise to successor liability falls under the ambit of § 302 and, therefore, is properly characterized as an issue of corporate law.  *See Sourcing Mgmt., Inc. v. Simclar, Inc.*, 118 F.Supp.3d 899, 918 & n.7 (N.D. Tex. 2015) (issues concerning continuation successor liability governed by § 302);[14] *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 649 (5th Cir. 2002) (law of incorporation "governs ... substantive determination whether [entity] is subject to successor liability" under mere continuation theory); *Webb v. Rodgers Machinery Mfg. Co.*, 750 F.2d 368, 374 (5th Cir. 1985) (applying corporate law to issue of "the liability of a succeeding business entity using the trade name of a previously existing proprietorship"); *Precht v. Global Tower LLC*, No. 2:14-cv-743, 2016 WL 7443139, at *3 (W.D. La. Dec. 22, 2016) ("The underlying tort liability of the GTP entities for which the plaintiffs seek to hold ATC liable is governed by Louisiana law. Yet applying Louisiana law to the issue of ATC's corporate structure and liability for its affiliates would undermine the high bar Delaware sets for disregarding corporate separateness.") (internal quotation marks omitted).[15]

---

[13] In this vein, the continuation of enterprise theory differs from a product line theory of liability, which is based on the corporation's production of a product, an act which can clearly be performed by a non-corporate entity.  *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 464 (3d Cir. 2006) ("Thus, at one extreme lies the explicit and implicit assumption of liability exception, interpreted solely based on contract. At the other lies the product line exception, which is generally analyzed using torts choice of law principles. The de facto merger/continuation exception to successor liability rests somewhere in the middle.").

[14] The Mississippi Supreme Court has characterized the continuity of enterprise theory as a subset of the mere continuation exception to successor liability.  *See Paradise Corp. v. Amerihost Dev., Inc.*, 848 So.2d 177, 180 (Miss. 2003) (considering continuity of enterprise theory under "mere continuation" theory of liability).

[15] Deutz attempts to distinguish *Webb* by arguing that Texas law differs from Mississippi law because in "Texas, the common law doctrine of *lex loci delicti* was overruled ...."  Doc. #129 at 7.  Deutz argues that while Mississippi has limited the lex loci delicti rule, it has not completely abolished it.  *Id.*  The rule of lex loci delicti, which states that a court should apply the rule of the state where the injury occurred, is not a rule of classification.  Furthermore, the Mississippi Supreme Court has made clear that the rule must give way to the rules of the Restatement.  *Mitchell v. Craft*, 211 So.2d 509, 516 (Miss. 1968).  Accordingly, the Court finds *Webb*'s corporate law classification persuasive.

However, because an individual can expressly or impliedly assume liabilities of a business by agreement, *see, e.g., Murphee v. W.W. Transp.*, 797 So.2d 268, 274 (Miss. 2001); the assumption of liability issue is necessarily "determined by the same choice-of-law principles as are applicable to non-corporate parties." Restatement (Second) of Conflict of Laws § 301. When an act of contracting brings an issue outside the scope of § 302, the issue is properly characterized as an issue of contract. *Id.* cmt. b ("A corporation's rights and duties under a contract are determined by the law selected by application of the rules of §§ 187–88."). Accordingly, courts applying the Restatement have characterized as a contract issue the question of whether a successor corporation impliedly or expressly agreed to assume the liabilities of its predecessor. *See, e.g.*, *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 464 (3d Cir. 2006) ("Because [assumption of liability] is based on interpreting the terms of the parties' agreement, it is characterized most strictly as contract law."); *Bonee v. L & M Const. Chems.*, 518 F.Supp. 375, 380 (M.D. Tenn. 1981) (assumption of liability based on corporate sales agreement deemed contractual issue in tort action); *Knott v. AMFEC, Inc.*, No. 09-cv-1098, 2010 WL 1528393, at *3 (D. Minn. Apr. 15, 2010) ("[I]n accordance with the Agreement's choice-of-law clause, the Court will apply California law to determine whether and to what extent AMFEC II expressly or impliedly agreed to assume AMFEC I's liabilities."); *Chrysler Corp. v. Ford Motor Co.*, 972 F.Supp. 1097, 1104 (E.D. Mich. 1997) ("[T]heories based on contractual or quasi-contractual assumption of liability would seem to invoke the provisions of § 188, which specifies factors to be considered in contract actions in the absence of effective choice of law by the parties.").[16] Therefore, the Court concludes that the issue of whether the contribution agreements transferred

---

[16] *But see Nat'l Architectural Prods. Co. v. Atlas-Telecom Servs. – USA, Inc.*, No. 3:06-cv-751, 2007 WL 2051125, at *12 (N.D. Tex. July 13, 2007) ("Though an individual can enter into a contract with another individual to transfer assets of the individual, successor liability is an issue unique to corporate entities.").

liabilities is one of contract.

## D. Most Significant Relationship

Once a court has classified an issue, it must apply the appropriate sections of the Restatement to determine the state with the most significant relationship to the issue.

### 1. Assumption of liability

When analyzing a contract issue without a valid choice of law clause,[17] a court should view the specific provisions of § 188 "to be guiding" but "should look to section 6 to find the underlying principles of guideposts." *Zurich*, 920 So.2d at 433–34. Under this approach, "section 188 [creates] a presumption that can be rebutted by weighing the relative interests of the forum and other interested states under section 6." *Id*. at 436.

Section 188 states in relevant parts:

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement (Second) of Conflict of Laws § 188 (2)–(3).

---

[17] SAME America and SAME Group, citing the 1992 contribution agreement's German forum selection clause, argue that German law must apply. Doc. #139 at 5. However, a "forum selection provision is distinct from [a] choice of law provision, and the substantive law applied need not be that of the forum hearing the case." *United Rentals, Inc. v. Pruett*, 296 F.Supp.2d 220, 226 n.1 (D. Conn. 2003).

Here, SAME Group and SAME America argue, and Deutz does not dispute, that "[t]he 1992 Contribution Agreement was executed in Germany between two entities." Doc. #101 at 8. The parties have not addressed the other relevant factors.[18]   Accordingly, because the only factors argued to the Court support the application of German law, the Court concludes that a presumption arises that Germany has the most significant relationship to the issue of contract. *See Zurich*, 920 So.2d at 436.   This presumption may be rebutted by weighing the factors set forth in section 6 of the Restatement, as this Court will do below. *Id.*

### 2.   Continuity of enterprise

As explained above, the Restatement dictates that, when deciding issues of corporate law, a court should apply the law of the state of incorporation unless another state has a more significant relationship to the occurrence and the parties.   Restatement (Second) of Conflict of Laws § 302.   Here, the continuity of enterprise issue concerns the liability of Agrartechnik, a German corporation.   Accordingly, German law will apply unless, under § 6, another state has a stronger interest in resolving the issue.

### 3.   Section 6 analysis

The relevant parts of section 6 state:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

---

[18] The Court notes that Deutz, in an unrelated section of its summary judgment brief, argues that the KHD production factory sold to Agrartechnik was located in Germany. Doc. #82 at 15.   Therefore, the location-of-the-subject-matter-of-the-contract factor would also seem to point toward Germany.

(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(1)-(2).

First, a court "should seek to further harmonious relations between states and to facilitate commercial intercourse between them." Restatement (Second) of Conflict of Laws § 6 cmt. d. Here, the application of Mississippi law would likely upset commercial relationships between Mississippi and Germany insofar as it would subject German contracts and asset sales to Mississippi law. Were such to be the case, German corporations, uncertain of the potential applications of Mississippi law, would likely avoid doing business in Mississippi.[19] Additionally, the adoption of German law to determine the transfer of liabilities between German corporations would further the harmonious relationship between the United States and Germany by evincing "respect and recognition" of German law. *See Figueroa v. Williams*, No. V-05-56, 2010 WL 5387599, at *5 (S.D. Tex. Dec. 17, 2010) ("International comity also supports the Court's respect and recognition of Latin American law, even if it would not provide Plaintiffs with the same recovery as Texas law."). Therefore, the first factor weighs in favor of applying German law.

Second, there can be no doubt that Mississippi has an interest in, and a policy of, ensuring that Mississippians receive compensation for their injuries. *See Zurich*, 920 So.2d at 437 ("The under-compensation of injured Mississippi plaintiffs is a serious concern."). Accordingly, this factor weighs in favor of applying Mississippi law.

---

[19] *See Hoiles v. Alioto*, 461 F.3d 1224, 1230 (10th Cir. 2006) ("An attorney who is licensed to practice law only in California, does not travel outside California to solicit business, and performs legal services mainly in California is not likely to enter into attorney-client relationships with citizens from other states if he is required to conform to each state's unique contingent fee agreement requirements merely because his client is a resident of another state.").

Third, the Court has found no policy articulated by German courts regarding the successor liability issues implicated here. Accordingly, this factor is neutral. Similarly, the fourth factor is ordinarily neutral when applied to issues of successor liability because the plaintiff in the action ordinarily has no justified expectation regarding application of a particular law to a corporate succession she likely knew nothing about. *See Berg*, 435 F.3d at 466 ("Here, there is no protection of justified expectations because SPI and Berg did not bargain with each other; Berg brought a third-party action.").

Fourth, "the purpose of successor liability is to promote equity and avoid unfairness." *In re Emoral, Inc.*, 740 F.3d 875, 881 (3d Cir. 2014). As a general matter, there is nothing distinctly inequitable nor unfair in the rules of German successor liability at issue here which, while more demanding than the laws of Mississippi, still offer substantial protection for plaintiffs and corporations alike. More specifically, the application of German law here would not produce an inequitable or unfair result—the predecessor corporation in this case would remain a viable defendant such that Germany's stricter successor liability laws would not deprive Judy of a cause of action. From the corporate perspective, it would be both equitable and fair to apply German law to a German transaction involving German corporations.

Fifth, the Court concludes that it would advance the principles of certainty, predictability, and uniformity of result to apply the single law of Germany to issues of successor liability arising from the corporate succession of two German corporations. Such an approach is vastly preferable to the alternative, which would base a foreign corporation's successor liability on the law of whichever state an injury happened to occur. *See Potomac Elec. Power Co. v. Ca. Union Ins. Co.*, 777 F.Supp. 968, 973 (D.D.C. 1991) ("[C]ommon sense suggests that, knowing of the potential for claims in any number of states ... the parties would consider the insured's principal

headquarters as the one jurisdiction which ties all potential parties together."); *see also Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 41 (1st Cir. 2008) ("In a situation such as this one, where one party has contracted for the services of independent contractors based in different states, there is greater certainty and predictability for all parties if those contracts, negotiated at similar times and on similar terms, are all governed by the same state's laws, rather than by the law of the state where an independent contractor happens to live.").

Sixth, the Restatement directs that "choice-of-law rules should be simple and easy to apply." Restatement (Second) of Conflict of Laws § 6 cmt. i. The Court believes that the approach articulated in this opinion – which fixes corporate successor liability on the law of the state of incorporation and the state of sale – is a far simpler and easier method than a locus-based approach which would lead to chaos in multi-plaintiff actions.

Deutz, citing out-of-district authority, argues that Mississippi has an interest "in applying its law to citizens injured by foreign corporations." Doc. #129 at 8. However, the Mississippi Supreme Court has made clear that "the fact that a cause of action arose in Mississippi and that Mississippians are involved does not in itself generate an interest in Mississippi that is superior to that of another state." *Zurich*, 920 So.2d at 436. Here, the relevant § 6 factors point toward the application of German law. Accordingly, the Court must conclude that the presumptions favoring German law have not been rebutted. Therefore, German law governs the successor liability issues in this case.

**V**
**Foreign Law and Role of Special Master**

Where issues in a case are governed by foreign law, a court must proceed under Rule 44.1 of the Federal Rules of Civil Procedure, which provides:

A party who intends to raise an issue about a foreign country's law must give

notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Pursuant to Rule 44.1:

The content of foreign law is a question of law and is subject to de novo review. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under Rule 43. Under this rule, expert testimony accompanied by extracts from foreign legal material is the basic method by which foreign law is determined. It is not, however, "an invariable necessity in establishing foreign law, and indeed, federal judges may reject even the uncontradicted conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities." Likewise, differences of opinion among experts on the content, applicability, or interpretation of foreign law do not create a genuine issue as to any material fact under Rule 56. In general, summary judgment is appropriate to determine the content of foreign law.

*Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 713 (5th Cir. 1999) (internal quotation marks and citations omitted).

A district court, acting pursuant to Rule 44.1, may appoint a special master "to aid the court in determining foreign law." *Henry v. S/S Bermuda Star*, 863 F.2d 1225, 1227–28 & n.3 (5th Cir. 1989). Upon receiving a special master's report and recommendation, "a district court must decide *de novo* all objections to findings of fact and conclusions of law made or recommended by a special master." *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 789, 813 (E.D. La. 2007). Additionally, "though not mandated by Rule 53, a court may nevertheless review de novo a special master's findings of fact and conclusions of law as to which there are no objections." *Id*.

## VI
## Report and Recommendations

The order of appointment directed Ebke to answer three questions:

[Question 1:] At the time of the 1992 contribution agreement between Deutz, then

named Kloeckner-Humboldt-Deutz AG, and Agrartechnik GmbH, did German law prohibit Deutz from transferring to Agrartechnik or prohibit Agrartechnik from assuming from Deutz the product liability risk of the claims brought by Plaintiff under the Mississippi Product Liability Act?

[Question 2:] In the 1992 contribution agreement, whether by reference to the transfer balance sheet or otherwise, did Deutz expressly or impliedly transfer to Agrartechnik or did Agrartechnik expressly or impliedly assume from Deutz the product liability risk of the claims brought by Plaintiff?

[Question 3:] Even if the product liability risk at issue was not transferred or assumed in the 1992 agreement, are the SAME Defendants nonetheless liable for a judgment, if any, in Plaintiff's favor, pursuant to German successor liability law, including under a doctrine similar to Mississippi's "continuity of enterprise" theory, identified herein?

Doc. #188 at 3–4 (emphases omitted).

The order resubmitting the report and recommendation directed Ebke to answer three

additional questions:

Question 4: Assuming the 1992 Contribution Agreement could be read to expressly or impliedly transfer from Deutz to Agrartechnik the product liability risk of the claims brought by Judy Bouchillon, did Judy Bouchillon, by arguing in this case that the 1992 Contribution Agreement transferred liability to Agrartechnik, ratify such transfer, within the meaning of Section 415 of the German Civil Code?

Question 5: In the 1992 Contribution Agreement, could Deutz, without ratification by Judy Bouchillon as Claimant, have effectively transferred to Agrartechnik, or could Agrartechnik, without ratification by Judy Bouchillon as Claimant, have effectively assumed from Deutz, the product liability risk of the claims brought by Judy Bouchillon?

Question 6: Does German law, like American law, recognize that a party may have a duty to indemnify against a claim without being liable for the claim itself?

Doc. #225 at 8.

The Resubmitted R&R includes a procedural history of Ebke's involvement in this case,

Doc. #226 at ¶¶ 1–24; the Original R&R's analysis and recommendations regarding Questions 1,

2, and 3, *id.* at ¶¶ 25–84; and an analysis and recommendations regarding Questions 4, 5, and 6,

*id.* at ¶¶ 85–106.  Deutz has lodged general objections to the Resubmitted R&R and specific objections to the Resubmitted R&R's responses to Questions 2, 3, 4, 5, and 6.

### A.  General Objections

Deutz raises two overarching objections:  (1) that Questions 3, 4, 5, and 6 "necessarily limited" Ebke's answers; and (2) Ebke's recommendations are not "dispositive" to the ultimate issues in this case.

### 1.  Nature of questions

As to its first objection, Deutz argues:

> With respect to Questions Three through Six, and in particular, to Questions Three and Six, DEUTZ objects to the Special Master's conclusions insofar as the Special Master's exercise in evaluating whether or not German law has a similar rule to Mississippi law is necessarily limited in its comparison. As evidenced by even the Special Master's analysis offered in his report, it is difficult to take abstract rules and apply them as if they are implantable within another legal system. For example, with respect to Question Three, the German rules on successor liability explained by the Special Master were not developed specifically for product liability cases; they are general rules applicable as a matter of commercial law.

Doc. #228 at 4.

The nature of this objection is confusing.  Of the questions identified, only two—Questions 3 and 6—reference American law in any way.  Question 3 asked:  "Even if the product liability risk at issue was not transferred or assumed in the 1992 agreement, are the SAME Defendants nonetheless liable for a judgment, if any, in Plaintiff's favor, pursuant to German successor liability law, including under a doctrine similar to Mississippi's "continuity of enterprise" theory, identified herein?"  Doc. #188 at 3–4 (emphases omitted).  Question 6 asked:  "Does German law, like American law, recognize that a party may have a duty to indemnify against a claim without being liable for the claim itself?"  Doc. #225 at 8.  Neither question purports to limit the answer to whether German law has an analogous American rule.  Rather,

Question 3 specifically asked for a broad application of "German successor liability law." Question 6 asked whether German law includes a specific legal distinction, which also happens to exist in American law. Ebke's answers were not limited by these questions. Accordingly, neither of these questions was improper. Deutz's first objection is overruled.

### 2. "Dispositive" nature of recommendations

Deutz also objects to the various recommendations on the grounds that they are not "dispositive" because Mississippi law, not German law, governs the issues of successor liability in this case. Doc. #228 at 5 & n.2. This Court has already found that German law governs the issues of successor liability before the Court. Accordingly, this objection is overruled.

### B. Basics of German Law

Before turning to the specifics of this case, Ebke set forth four general rules for interpreting and applying German law:

> A German court would start its legal analysis by looking to pertinent statutory provisions and interpret and apply these provisions in light of pertinent case law, taking in consideration the views of legal scholars and commentators.
>
> While, formally, the doctrine of *stare decisis* is not part of the German legal system, courts will, as a general rule, follow the rulings of higher courts, especially of the *Bundesgerichtshof* (Federal Supreme Court), Germany's highest court for private law matters (e.g., contract, tort, commercial, corporate, and product liability law).
>
> A German court will also take into consideration general principles of law developed and recognized by courts.
>
> Under German law, statutory provisions are to be interpreted based upon the wording of the respective provision, its historical background, the systematic context and in light of the purpose(s) of the provision. The same principles apply to the interpretation of contracts.

Doc. #226 at ¶¶ 33–36 (paragraph numbering omitted). No party has objected to these general principles of law. Accordingly, these statements are adopted as conclusions of the Court.

## C.  Question 1

Ebke first concluded that the German Product Liability Act ("GPLA") did not "prohibit Deutz from transferring to Agrartechnik or prohibit Agrartechnik from assuming from Deutz the product liability risk of the claims brought by Plaintiff under the Mississippi Product Liability Act." Doc. #226 at ¶ 37.  Based on this conclusion, Ebke recommended that the first question be answered as follows:

> At the time of the 1992 Contribution Agreement between Deutz, then named KloecknerHumbolt-Deutz AG, and Agrartechnik GmbH, German law did not prohibit Deutz from transferring to Agrartechnik or prohibit Agrartechnik from assuming from Deutz the product liability risk of the claims brought by Plaintiff under the Mississippi Product Liability Act.

*Id.* at ¶ 82.

No party has objected to this recommendation and the Court adopts it as a conclusion of the Court.

## D.  Question 2

Turning to the second question, Ebke began by concluding:

> In view of the clear and unambiguous language of Section 1 of the 1991 Contribution Agreement, it is obvious that reserves (provisions) for product related liability risks, if any, were not covered by the 1991 Contribution Agreement because Section 1 of the 1991 Contribution Agreement expressly referred only to "reserves for pensions" ("provisions for pensions").

Doc. #226 at ¶ 52.

Next, Ebke noted that under the 1992 contribution agreement, the transfer of liabilities and assets from the tractor division included "all unconditional, conditional and uncertain liabilities recorded or named in the transfer balance sheet."  *Id*. at ¶ 54 (internal alterations omitted).  Ebke further noted that "[a]ccording to Section 3 of the 1992 Contribution Agreement, the ... transfer balance sheet [was to be prepared] in accordance with German generally accepted

book-keeping and financial accounting principles in conformity with Book 3 of the German Commercial Code." *Id*. at ¶ 53.

Ebke then explained that "[a]ccording to German generally accepted financial accounting principles, a company is required, as a general rule, to itemize provisions ... for uncertain liabilities." *Id*. at ¶ 60. When not itemized, "[g]eneral flat-rate provisions ... for uncertain liabilities ... are permitted only if a number of prerequisites are met." *Id*.

Applying these rules to the transfer balance sheet, Ebke first concluded that the sheet "did not record ..., as a specific item, any uncertain product liabilities and risks ...." *Id*. at ¶ 63. However, Ebke allowed that "in theory, the transfer balance sheet item 'other reserves' may have included provisions for uncertain product liabilities and risks." *Id*. at ¶ 64. Ebke could not conclude whether there were "any uncertain product liabilities or risks that could have been recorded as a line item or generally under the item 'other reserves' in the transfer balance sheet ...." *Id*. at ¶ 65.

Ebke then turned to Sections 414 and 415 of the German Civil Code, which regulate "[t]he transfer and assumption of a liability (debt)." *Id*. at ¶ 66 (internal quotation marks omitted). Under the relevant provisions, a "future liability," such as Judy's claim, "can be transferred only with the obligee's (i.e., the Claimant's) ratification." *Id*. at ¶ 71. However, Ebke observed that section 13, subsection 2, of the 1992 agreement, which governs the transfer of duties and legal relationships, "provides that in the absence of consent by a third party 'the parties shall treat each other inter se as if the transfer had been effectuated.'" *Id*. at ¶ 73. Based on this law and the text of section 13, Ebke concluded:

> [W]hile there may have been a "debt" within the meaning of Section 415 of the German Civil Code that could have been transferred under the 1992 Contribution Agreement from KHD to Agrartechnik and assumed by Agrartechnik[,] the intended transfer and assumption of "all unconditional, conditional and uncertain

liabilities" are not effective, according to German law, for want of ratification by the Claimant.

> However, Section 13 Subsection 2 of the 1992 Contribution Agreement provides that in the absence of the ratification by the third party "the parties shall treat each other inter se as if the transfer had been effectuated". Hence, while under the 1992 Contribution Agreement Agrartechnik has not assumed uncertain product liabilities or risks from KHD and is, therefore, not liable directly to the Claimant, Agrartechnik is "obliged to satisfy in their entirety all claims of the contracting partners and shall hold KHD harmless from all such claims."

*Id*. at ¶ 75–76 (paragraph number omitted). Accordingly, Ebke recommended that Question Two be answered as follows:

> In the 1992 Contribution Agreement, whether by reference to the transfer balance sheet or otherwise, Deutz did not transfer expressly or impliedly to Agrartechnik nor did Agrartechnik expressly or impliedly assume from Deutz the product liability risk of the claims brought by Plaintiff.

*Id*. at ¶ 83.

Deutz objects to this conclusion on the grounds that it is inconsistent with Ebke's actual analysis, which reflected uncertainty as to whether the 1992 contribution agreement and corresponding transfer balance sheet purported transfer future liabilities. Doc. #228 at 5–7. To be sure, Ebke repeatedly stated that it was unclear whether the agreement included a purported transfer of liabilities. However, he did not base his recommendation on a determination that the agreement omitted future product liabilities. Rather, Ebke made clear that the purported transfer failed for lack of ratification. Because, as explained below, this Court concludes that there was no ratification of the purported transfer, Ebke's recommendation regarding Question 2 is not inconsistent with his analysis. The recommended conclusion, therefore, is adopted as a conclusion of this Court, and Deutz's objection is overruled.

## E.  Question 3

As to Question 3, Ebke noted that "[w]hile German law does not have a doctrine

resembling Mississippi's 'continuity of enterprise' theory, there are statutory provisions and general principles of law in Germany that reach functionally comparable results." Doc. #226 at ¶ 77. Specifically, Ebke noted that: (1) under Section 419 of the German Civil Code, parties may be jointly and severally liable for a claim if the claim existed at the time of the transfer, *id*.; and (2) under Section 25 of the German Commercial Code, a successor may be liable if it continues a transferred business under its original name, *id*. at ¶ 79. However, Ebke concluded that these provisions do not apply to this case because the claims at issue did not exist at the time of the transfer, *id*. at ¶ 79; and Agrartechnik did not continue the transferred business under its original name, *id*. at ¶ 80.

Accordingly, Ebke recommended that Question Three be answered as follows:

SAME Defendants are not liable for a judgment, if any, in Plaintiff's favor, pursuant to German law on successor liability, including under a doctrine similar to Mississippi's "continuity of enterprise" theory, identified herein.

*Id*. at ¶ 84.

In objecting to this conclusion, Deutz argues: (1) the conclusion "does not take into account [that Agrartechnik] is obligated to satisfy claims and hold DEUTZ harmless from Plaintiff's claims in this instance;" and (2) the conclusion "fails to evaluate or even note that under German law, any claim by Plaintiff against any of the defendants would have long expired" under the applicable statute of limitations and statute of repose. Doc. #217 at 10–11.

As an initial matter, because it is undisputed that German law recognizes that a party may have an indemnification duty without being liable for a claim, there was no reason for Ebke to "take into account" Agrartechnik's indemnification duties. Additionally, Ebke was not asked to opine on the impact of Germany's statute of limitations or its statute of repose. Rather, Ebke was asked to consider whether the SAME defendants would be liable under German law on

successor liability. Ebke answered this question in the negative on the grounds that the most applicable German successor liability doctrines would not apply to this case. His decision not to include statute of limitations in this analysis was correct, not error. Accordingly, because there is no dispute that German law would not impose successor liability in this case, Ebke's recommendation as to Question Three is adopted as a conclusion of this Court.

## F. Question 4

In a subsection titled "Preliminary Observations" at the beginning of his Question 4 analysis, Ebke states, "I should like to emphasize again that, on the basis of the documents and information provided to me, it is unclear whether and, if so, to what extent the transfer balance sheet as of April 1, 1992, actually transferred ... product liabilities and risks of claims, including the claim brought by Judy Bouchil[l]on." Doc. #226 at ¶ 85. After discussing the lack of clarity regarding the transfer, Ebke turned to German law of ratification.

According to Ebke, Section 415 of the German Civil Code "provides that 'ratification may only occur when the obligor or the third party has notified the obligee of the assumption of the debt.'" *Id*. at ¶ 93 (internal alterations omitted). He concluded that Deutz, through its July 18, 2015, motion for summary judgment, notified Judy of the alleged assumption. *Id*. at ¶¶ 93–94. After reaching this conclusion, Ebke focused on two potential acts of ratification: (1) Judy's September 4, 2015, response to Deutz's motion for summary judgment in which she argued that "by virtue of the 1991 and 1992 agreements ... [SAME] Group and SAME Germany are legally responsible for product liability claims related to [the] tractor;" and (2) Judy's November 23, 2015, response to the SAME defendants' motion for summary judgment in which she argued that "the 1992 agreement effectively transferred Deutz's tractor related product liabilities to KHD Agrartechnik." *Id*. at ¶¶ 99, 96–102. In evaluating these statements, Ebke applied a rule

announced by the German Supreme Court which states:

> [R]atification ... may be assumed only if the circumstances of the case, especially the economic interests of the parties and the objective of the transfer and assumption of the debt, allow the court clearly to conclude that the obligee was willing to relinquish his or her claims against the obligor and pursue his or her rights only against the transferee.

*Id.* at ¶ 98. With regard to the September 4, 2015, filing, Ebke wrote:

> By arguing that by virtue of the 1992 Contribution Agreement the SAME Group and SAME Germany are *legally responsible* (emphasis added) for her product liability claims related to the tractors, Judy Bouchillon, in my opinion, did not necessarily declare her willingness to ratify the transfer of the product liabilities and risks of claims by Deutz to Agrartechnik and the assumption of those liabilities and risks by Agrartechnik from Deutz. As stated before, ratification would have the effect that Judy Bouchillon would relinquish her product liability claims, if any, against Deutz and be able to pursue her claims, if any, only against the transferee. A person seeking damages in a product liability case would, in my opinion, ratify such a transfer and assumption of liabilities and risks only if the transferee is economically in a position to satisfy a judgment, if any, in his or her favor. Also, in an international case, the enforcement of a judgment, if any, may be an aspect that an ordinary prudent plaintiff would take into account in deciding whether or not to ratify an agreement between the obligor and the third party. Obviously, I have no independent knowledge of the actual economic situation of the parties concerned. Nor do I have independent knowledge of the reasons for and objectives of the intended transfer of the product liabilities and risks of claims from Deutz to Agrartechnik and their assumption by Agrartechnik from Deutz. Yet, in any event, economically, it would, as a general rule, strengthen Judy Bouchillon's position if she would not ratify the transfer of the product liabilities and risks of claims to, and the assumption of the product liabilities and risks of claims by, Agrartechnik. Otherwise, Judy Bouchillon would free Deutz from its products liability to her, if any ("befreiende Schuldübernahme"). Rather, it would be in her interest if the SAME defendants would become additional debtors, i.e., in addition to Deutz as the original obligor ("begünstigender Schuldbeitritt"). Thus, by arguing that by virtue of the 1992 Contribution Agreement the SAME Group and SAME Germany are *legally responsible* (emphasis added) for her product liability claims related to the tractors, Judy Bouchillon would not seem to have ratified the transfer or assumption, respectively, thereby freeing Deutz from its products liability, if any, to Judy Bouchillon. Such an interpretation of her response of September 4, 2015, would seem to be in line with a number of decisions of the German Supreme Court in which the Court held that in case of doubt it cannot be assumed that an obligee is willing to ratify the transfer and assumption of liabilities and risks of claims from the obligor to a third party, thereby relieving his or her original debtor of his or her liability.

Doc. #226 at ¶ 100.

> Turning to the November 23, 2015, response, Ebke wrote:
>
> The fact that Judy Bouchillon, on November 23, 2015, in response to the SAME defendants' motion for summary judgment, argued that "[t]he 1992 agreement effectively transferred Deutz's tractor related product liabilities to KHD Agrartechnik" (emphasis added), is a different issue. On its face, the argument may be construed to constitute a ratification. However, there is no presumption, the German Supreme Court has held, that an obligee is willing to relieve an obligor of his liability if the obligor agrees with a third party to transfer his liabilities and risks of claims to the third party and the third party assumes the liabilities and risks. According to the Supreme Court, ratification may be assumed only if all relevant circumstances, especially the economic interests of the parties and the objective of the transfer agreement, allow a court to clearly conclude that the obligee is willing to relieve his or her original debtor of his or her liability. That does not seem to be the case in the matter at hand, though.

*Id*. at ¶ 101 (footnote omitted).

Based on the above, Ebke recommended that Question 4 be answered as follows: "[I]t is unlikely that a court in Germany would conclude that by arguing that the 1992 Contribution Agreement transferred liability to Agrartechnik, Judy Bouchillon ratified such transfer within the meaning of Section 415 of the German Civil Code." *Id*. at ¶ 102. Deutz objects to this conclusion on the grounds that it is: (1) "uncertain;" and (2) based on a "misguided" assumption. Doc. #228 at 8–9.

First, Deutz argues that Ebke, in interpreting the September 4 filing, incorrectly assumed "it would be better for ... Bouchillon to have multiple defendants ... to pursue in this litigation ...." *Id*. Deutz contends that this assumption is undermined by the fact that the lack of ratification would likely lead to dismissal of the SAME defendants, which would actually reduce the number of defendants in the action. *Id*. The Court disagrees.

As quoted above, Ebke concluded that it would be better economically for Judy to argue that Deutz remained liable and then take the position that the SAME defendants are "additional

debtors" under German law.  There is nothing which suggests this is a "misguided" assumption. To the contrary, at least one German court has recognized as a relevant factor the benefits of the original debtor remaining liable.  *See BGH, judgment of 12 April 2012 - VII ZR 13/11.*

Next, Deutz argues that Ebke's recommendation should be rejected because he phrased his conclusions regarding a lack of ratification in less than absolute terms.  Doc. #228 at 8–9.  As an example of this language, Deutz points to Ebke's statement that Judy, in her September 4 filing, "***did not necessarily*** declare her willingness to ratify ...."  Doc. #228 at 9.  Deutz is correct that Ebke did not definitively state whether Judy declared her willingness to ratify.  However, this uncertainty is not fatal to his ultimate conclusion, which is amply supported by the law and facts set forth in the Resubmitted R&R.

As Ebke explained, a court may find a ratification of a transfer of debt only where circumstances allow the court clearly to conclude that the obligee was willing to relinquish his or her claims against the obligor and pursue his or her rights only against the transferee.  Doc. #226 at ¶ 98;  *BGH, judgment of 20 October 1982 -* IVa ZR 81/81, NJW 1983, 678, 679; Doc. #222-1. Under this standard, "[t]he intent of the creditor to 'release' the old debtor must ... be without doubt."  Doc. #222-2.  Judy's two statements, made in the course of this litigation, well before the issue of ratification arose, fall well short of this standard.

The first statement – that the SAME defendants are liable by virtue of the 1992 contribution agreement – evinces absolutely no intent to relieve Deutz of its obligations arising from the Tractor.  Rather, the statement merely asserts liability on the part of the SAME defendants.  Because a creditor does not ratify a transfer by seeking to recover against an alleged transferee, this statement cannot constitute a ratification.  *See BGH, judgment of 12 April 2012 - VII ZR 13/11* (no ratification based on sending invoices to alleged transferee).

The second statement – that the contribution agreement effectively transferred liability from Deutz to Agrartechnik – is a closer call. As observed by Ebke, the statement that "[t]he 1992 agreement effectively transferred Deutz's tractor related product liabilities to KHD Agrartechnik" could be considered on its face a ratification of the transfer. However, under German law, a court interpreting an alleged ratification must look beyond the language at issue to the "circumstances of the case." Doc. #226 at ¶ 8. When viewed in this manner, the second statement cannot be read as evincing a clear intent to relieve Deutz of its obligations.

Judy's response to the motion for summary judgment argued that the SAME entities were liable for the product liability claims based on the contribution agreements but also contended that Deutz *remained* liable for punitive damages arising from these claims. *See* Doc. #126 at 2 ("Plaintiff also contends that SDF Group and SDF Group's wholly owned subsidiary, SAME Germany, are responsible for product liability claims related to Mr. Bouchillon's tractor, however, <u>Deutz is responsible for punitive damages because it is against public policy to transfer liability for punitive damages by contract</u>."). Thus, rather than evince a clear intent to relieve Deutz of its liabilities, the relevant filing does the opposite – it seeks to impose liability on Deutz for the same claims which were allegedly released. Needless to say, this is not a clear statement that Judy was willing to relinquish her claims against Deutz. Accordingly, the Court concludes that Ebke's ultimate recommendation – that a German court would be unlikely to find ratification – is well founded and will be adopted as a conclusion of this Court.

## G. Question 5

As to Question 5, Ebke, pointing to the plain language of Section 415, which conditions the effectiveness of a transfer on ratification, concluded that "without ratification by Judy Bouchillon as Claimant, Deutz could not effectively transfer to Agrartechnik, nor could

Agrartechnik, without ratification by Judy Bouchillon as Claimant, have effectively assumed from Deutz, the product liability risk of the claims brought by Judy Bouchillon." Doc. #226 at ¶ 103. Deutz concedes that this is an accurate statement of law but objects on the grounds that it assumes there was no ratification. This objection is overruled because the assumption underlying the question does not undermine Ebke's answer. Accordingly, this recommendation is adopted as a conclusion of the Court.

## H. Question 6

Finally, Ebke wrote that the German relationship between indemnity and liability is set forth in Section 329 of the German Civil Code, which states, "Where one party to a contract agrees to satisfy an obligee of the other party without assuming the obligation, then in case of doubt it may not be assumed that the obligee is to acquire the right to demand satisfaction from him directly." *Id*. at ¶ 104. Based on this text, Ebke concluded that "German law ... recognize[s] that a party may have a duty to indemnify against a claim without being liable for the claim itself." *Id*. at ¶ 106. Deutz does not dispute that this conclusion accurately states German law. Doc. #228 at 11. This recommendation is adopted as a conclusion of the Court.

## I. Summary

For the reasons above, the Court concludes that the findings of fact and recommendations of law set forth in the Resubmitted R&R should be adopted. Accordingly, the motion filed by SAME Group and SAME America seeking adoption of the report in its entirety, Doc. #229, will be granted. Deutz's motion to adopt in part and modify in part, Doc. #228, will be granted to the extent it seeks adoption of Ebke's recommendation regarding Question 1 but will be denied in all other respects.

# VII
## Personal Jurisdiction

"A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). "Since Mississippi's long-arm statute is not coextensive with federal due process, an analysis of the scope of the reach of Mississippi's long-arm statute is usually required when a challenge is made to this court's exercise of personal jurisdiction." *Norris v. Krystaltech Int'l, Inc.*, 133 F.Supp.2d 465, 467 (S.D. Miss. 2000) (citing *Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir. 1997)).

Mississippi's long-arm statute provides, in relevant part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57. This provision provides three avenues for obtaining personal jurisdiction: (1) the contract prong; (2) the doing business prong; and (3) the tort prong. *See Walker v. World Ins. Co.*, 289 F.Supp.2d 786, 788 (S.D. Miss. 2003). Judy asserts only the tort prong in this case.

"Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Allred*, 117 F.3d at 282. Thus, "[f]or purposes of [the] long-arm statute, a tort is committed in Mississippi

when the injury results in this State." *Dunn v. Yager*, 58 So.3d 1171, 1185 (Miss. 2011). Judy argues that "Mississippi's long arm statute is satisfied because Mr. Bouchillon and the wrongful death beneficiaries suffered damages in Mississippi." Doc. #173 at 10 (footnote omitted).

There is no dispute that the tort prong is satisfied in a product liability action when, as here, the product is used in the state of Mississippi and causes injury in the state. *See Tellus Operating Grp., L.L.C. v. R & D Pipe Co.*, 377 F.Supp.2d 604, 607 (S.D. Miss. 2005) ("[T]he tubing sold by the defendants and installed by Tellus collapsed in Mississippi, causing damages and thereby completing the alleged tort. [T]he completion of the tort in Mississippi satisfies the long-arm statute to permit this court to exercise personal jurisdiction over the defendants."). However, SAME Germany argues that the long-arm statute does not apply because it "did not design, manufacture, sell, or distribute the subject Deutz model D3006 tractor." Doc. #136 at 8. Thus, in essence, SAME Germany argues that it did not, within the meaning of the long-arm statute, commit the tort at issue. In response, Judy and Deutz, citing *Patin*, oppose dismissal on the grounds that "SAME Germany is ... subject to personal jurisdiction ... because personal jurisdiction follows successor liability." Doc. #173 at 2, 11; Doc. #149 at 7.

In *Patin*, the Fifth Circuit held that Louisiana courts could exercise personal jurisdiction over a Florida corporation because the corporation was a successor to a predecessor corporation which was subject to personal jurisdiction in Louisiana. 294 F.3d at 652–53. In reaching this conclusion, the Fifth Circuit followed the general rule applied by "federal courts [that] have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Id*. at 653 (collecting

cases).  *Accord, LiButti v. United States*, 178 F.3d 114, 123 (2d Cir. 1999) (various courts have found "that when a person is found to be a successor in interest, the court gains personal jurisdiction over them simply as a consequence of their status as a successor in interest, without regard to whether they had any other minimum contracts with the state".

Although this Court has been unable to find a case where a Mississippi court has applied successor liability to a personal jurisdiction inquiry, the Mississippi Supreme Court has displayed a willingness to discard the corporate form for the purpose of applying the state's long-arm statute.  *See Canadian Nat. Ry. Co. v. Waltman*, 94 So.3d 1111, 1115–16 (Miss. 2012) (piercing corporate veil for purpose of personal jurisdiction inquiry).  It seems likely then that it would extend this willingness to the realm of successor liability.  Accordingly, Deutz's contacts with the state of Mississippi may be imputed to SAME Germany if SAME Germany may be deemed a successor to Deutz.  *See Patin*, 294 F.3d at 652–53.

When a plaintiff seeks to impose liability based on successor liability, she must show: "(1) that the court has personal jurisdiction" over [the predecessor corporation];" and (2) that [the defendant] is liable as a successor ... under [applicable] law."  *Patrick v. Mass. Port Auth.*, 141 F.Supp.2d 180, 185 (D.N.H. 2001).  With regard to the second prong, the Fifth Circuit has held that the applicable law is to be determined by applying the forum state's choice of law principles.  *See Patin*, 294 F.3d at 649–50 (applying choice of law principles for purpose of determining personal jurisdiction pursuant to successor liability); *Alert 24 Sec., LLC v. Tyco Int'l, Ltd.*, 823 F.Supp.2d 589, 595 (S.D. Tex. 2011) (same).

Here, there is no dispute that the Court has personal jurisdiction over Deutz, the predecessor company.  Accordingly, the Court must consider whether SAME Germany may properly be deemed a successor to Deutz for the purpose of applying Mississippi's long-arm

statute.  To this end, for the reasons set forth above, the Court applies German law of successor liability.[20]

Applying German law, the Court concludes, for the reasons above, that SAME Germany would not be subject to successor liability under German law.  Specifically, the Court concludes that the contribution agreements did not transfer liability to the SAME entities because there was no ratification of the relevant transfers, and that German law would not recognize SAME Germany as a successor because the claims at issue here did not exist at the time of the transfer and because the transferred business was not continued under the original name.  Because SAME Germany is not a successor to Deutz, the Court may not impute Deutz's alleged commission of the tort to SAME Germany for the purpose of applying the long-arm statute.  Therefore, this Court lacks personal jurisdiction over SAME Germany and SAME Germany's motion to dismiss must be granted.  *See Patrick*, 141 F.Supp.2d at 185.

## VIII
## Cross Motions for Summary Judgment

In its motion for summary judgment, Deutz argues that it is not liable for the product liability claims because it transferred the product related liabilities through the 1991 and 1992 contribution agreements.  Doc. #81.  In their motion for summary judgment, which also serves as a response to Deutz's motion, SAME Group and SAME America argue that they are not liable for the product liability claims because they did not assume Deutz's liabilities, were not responsible for the design or manufacture of the relevant tractor, and because they cannot be liable under a theory of successor liability.  Doc. #100.  Deutz and Judy oppose SAME Group

---

[20] In *Waltman*, the Mississippi Supreme Court, without discussion or a choice of law analysis, applied Mississippi law to analyze whether to pierce the corporate veil for the purpose of personal jurisdiction.  94 So.3d at 1115–16.  To the extent a choice of law issue was not before the *Waltman* court, the Court does not find the court's application of Mississippi law to be dispositive.  *See Shortie v. George*, __ So.3d __, No. 2015-CA-944, 2017 WL 2257582, at *12 (Miss. Ct. App. May 23, 2017) (choice of law issue waived if not raised).

and SAME America's motion for summary judgment on the grounds that the SAME entities are liable under the contribution agreements and under a continuity of enterprise theory of successor liability.

Turning first to Deutz's motion, the Court concludes, for the reasons above, that under applicable German law, neither the 1991 contribution agreement nor the 1992 contribution agreement transferred liability for product related liabilities from Deutz. Therefore, Deutz's motion for summary judgment must be denied.

As for Same Group and SAME America's motion, the parties do not dispute that Mississippi law should be applied to determine the ultimate issues of tort liability in this action, which involves injury to a Mississippi resident within the State of Mississippi. *See* Restatement (Second) Conflict of Laws § 145. Under Mississippi law, in the absence of a recognized basis for successor liability, a successor corporation will not be liable for the torts caused by products manufactured by the corporation's predecessor. *See Huff*, 786 So.2d at 388–89 (affirming summary judgment for successor corporation on product liability claims when successor liability exceptions did not apply). Accordingly, in the absence of successor liability, the SAME entities would not be liable for the product liability claims at issue here, which are based on a product manufactured by a predecessor corporation. *Id.* As explained above, this more specific inquiry, is governed by German law.

For the reasons above, the Court concludes that the SAME entities are not subject to successor liability under German law and that there is no genuine issue of material fact in this regard.[21] Therefore, SAME Group and SAME America's motion for summary will be granted.

---

[21] In reaching this conclusion, the Court rejects Deutz's assertion that Ebke's less than definitive language suggests there is a genuine issue of material fact on the issue of a valid ratification. As explained above, the alleged ratification clearly stated an intent to impose liability on Deutz for the Tractor and cannot, therefore, be considered a

**IX**
**Conclusion**

For the reasons above:

1.      SAME Germany's motion to dismiss [135] is **GRANTED**;

2.      Deutz's motion for summary judgment [81] is **DENIED**.

3.      SAME Group and SAME America's motion for summary judgment [100] is **GRANTED**.

4.      SAME Group and SAME America's motion to adopt the Resubmitted R&R [229] is **GRANTED**.

5.      Deutz's motion to adopt in part and modify in part the Resubmitted R&R [228] is **GRANTED in Part and DENIED in Part**.  The motion is GRANTED to the extent it asks the Court to adopt the Resubmitted R&R's recommendation regarding Question 1.  The motion is DENIED in all other respects.

6.      SAME Deutz-Fahr North America, Inc., SAME Deutz-Fahr, Group, and SAME Deutz-Fahr Deutschland, GmbH are **DISMISSED** from this action.

**SO ORDERED**, this 5th day of July, 2017.

                                                        **/s/ Debra M.  Brown**
                                                        **UNITED STATES DISTRICT JUDGE**

ratification under German law.